J-S44014-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ADOPTION OF: L.S.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: WESTMORELAND COUNTY CHILDREN'S BUREAU | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 514 WDA 2019 |

Appeal from the Order Entered March 20, 2019
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): No. 135 of 2018

BEFORE: SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.: FILED OCTOBER 15, 2019

The Westmoreland County Children's Bureau (the "Agency") appeals from the order dated March 19, 2019, and entered March 20, 2019, denying the Agency's petition seeking to involuntarily terminate the parental rights of A.M.K ("Mother") and G.L.P. ("Father"), the biological parents of their son, L.S.P., born in October of 2016, ("Child"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(5), (8), and (b). We affirm.

On September 19, 2017, the Agency assumed emergency custody of Child upon receiving reports that Mother was homeless and using illegal drugs in Child's presence. N.T., 2/14/19, at 19. Father was incarcerated at the

time.[1]  Id.  Child was adjudicated dependent on October 10, 2017 and was placed in the kinship foster home of his maternal grandmother.  Id.

On September 25, 2018, the Agency filed the petitions to involuntarily terminate the parental rights of Child's parents.[2]  On February 14, 2019, the trial court held an evidentiary hearing on the petitions.  Mother was not present at the hearing, but her counsel, Attorney Andrew Snyder, was present.  Father participated, via video conference, from the State Correctional Institution ("SCI") Quehanna Boot Camp, where he was incarcerated.  Father's counsel, Attorney Eric Dee, was present at the hearing.  The guardian ad litem ("GAL") for Child, Attorney Diane Murphy, was present at the hearing and participated.

The Agency first proffered the testimony of Cody Johns, a supervisor of Justice Works Youth Center, the agency that provided supervised visits between the parents and Child until Father was incarcerated in June of 2018 and Mother stopped visiting in July of 2018.  N.T., 2/14/19, at 4–5.  Mr. Johns was qualified as an expert in parent-child relationships.  Id. at 12–13.

_____

[1] Although Father was incarcerated at the time Child was removed from Mother's custody, Father was released on September 22, 2017, at which point he entered inpatient treatment.  N.T., 2/14/18 at 24.  Following treatment, Father transitioned to a halfway house and then a three-quarter house.  Id. In June of 2018, however, Father reoffended, was again incarcerated, and remained incarcerated for the pendency of the petitions to terminate.

[2] The trial court assigned the same trial court docket number to the petitions.

Next, Tara Lorenzo, a caseworker for the Agency assigned to Child, testified as an Agency witness. N.T., 2/14/19, at 18. Ms. Lorenzo testified that the trial court placed Child in Agency custody on September 19, 2017, and adjudicated him dependent on October 10, 2017. Id. at 19. At the time of the termination hearing, Child had been in Agency custody for seventeen months. Id. Ms. Lorenzo testified that Father had three visits with Child, each of which were initiated by Father, since Father's incarceration in June of 2018: on August 24, 2018, at the Washington County Prison; on September 21, 2018, at SCI Greene; and on February 2, 2019, at SCI Quehanna Boot Camp. Id. at 26–27, 48. Child's paternal grandmother transported Child to the three visits with Father. Id. at 27.

On cross-examination by Father's counsel, Ms. Lorenzo testified that Father sent three letters to Child's maternal grandmother concerning Child. N.T., 2/14/19, at 43. On re-direct examination for the Agency, Ms. Lorenzo testified that, in the three letters, Father asked how Child was doing. Id. at 47. In the letter that Father sent in late December of 2018, Father requested that maternal grandmother give Child a hug and a kiss, and tell Child that his daddy loves him. Id. On cross-examination by Attorney Murphy, Ms. Lorenzo testified that Child was immediately placed in kinship foster care with his maternal grandmother and step-maternal grandfather, who wish to adopt him, where he has remained. Id. at 35–36, 46. Ms. Lorenzo testified that

Child views his maternal grandmother and step-grandfather as his mother and father. Id. at 36.

Father then testified on his own behalf from the SCI Quehanna Boot Camp Facility via video conference. N.T., 2/14/19, at 49. Father testified that he would be eligible for release from boot camp on July 2, 2019, and he planned to live with his mother and grandmother in Washington County. Id. at 52. He had last seen Child on February 2, 2019, when Child had a two-hour visit, at which he was permitted to have physical contact with Child. Id. at 52–53. Father testified to his desire to overcome his substance abuse issues, to raise Child, and to his love for Child. Id. at 57–59, 67–80.

On March 20, 2019, the trial court denied the Agency's petitions. On April 2, 2019, the Agency filed a notice of appeal challenging the March 20, 2019 order, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]

In its brief on appeal, the Agency raises the following issues:

1. Did the trial court err as a matter of law and/or abuse its discretion in denying the Agency's petitions to involuntarily terminate Birth Parents' rights pursuant to 23 Pa.C.S. §2511(a)(5) when the Agency proved by clear and convincing evidence that grounds for termination exist?

_____

[3] The Agency also filed a second notice of appeal from the March 19, 2019 order, which was assigned our docket number 492 WDA 2019. This Court discontinued the appeal on April 17, 2019, after the Agency's filed a praecipe for a discontinuance because the appeals were duplicative. Notice of Discontinuance of Action, 4/17/19.

2. Did the trial court err as a matter of law and/or abuse its discretion in denying the Agency's petitions to involuntarily terminate Birth Parents' rights pursuant to 23 Pa.C.S. §2511(a)(8) when the Agency proved by clear and convincing evidence that grounds for termination exist?

3. Did the trial court err as a matter of law and/or abuse its discretion in denying the Agency's petitions to involuntarily terminate Birth Parents' rights pursuant to 23 Pa.C.S. §2511(b) when the Agency proved by clear and convincing evidence that termination would best serve the needs and welfare of Child?

4. Are the findings of fact and credibility determinations set forth in the [trial court's] Opinions, dated March 19, 2019 and April 16, 2019, supported by the record?

Agency's Brief, at 4.

In reviewing an appeal from the denial of a petition to terminate parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 608 Pa. 9, [26,] 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; R.I.S., [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Id.; see also Samuel Bassett v. Kia Motors America, Inc., 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); Christianson v. Ely, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. Id.

As we discussed in R.J.T., there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not

equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. R.J.T., [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second[-]guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. In re Adoption of Atencio, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

In re Adoption of S.P., 47 A.3d 817, 826–827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" Id. (quoting In re J.L.C., 837 A.2d 1247, 1251 (Pa. Super. 2003)). "Satisfaction of the requirements in only one subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination." Z.S.W., 946 A.2d 726, 729 (Pa. Super. 2008) (brackets omitted, emphasis in original).

We will consider the Agency's issues together, as its arguments are interrelated. In its brief on appeal, the Agency argues that it satisfied all of the statutory requirements to support the termination of both parents' parental rights under Section 2511(a)(5), (8), and (b) of the Adoption Act,

and that case law required the Agency to satisfy only one subsection of Section 2511(a) in order to support termination. Agency's Brief, at 12–13. The Agency complains that the trial court did not discuss its reasoning for denying the petitions with regard to Section 2511(a)(8) in its opinion dated March 19, 2019, that accompanied its order, and only discussed that section in its Rule 1925(a) opinion dated April 16, 2019. Id. at 12–13.[4] The Agency argues that the trial court's failure to set forth support for its denial of the termination of parental rights to Child under Section 2511(a)(8) is reversible error. Id. at 12–14.

The Agency claims that termination of both parents' rights was warranted due to Father's continued substance abuse and incarceration, Mother's substance abuse and discontinuation of services, the length of Child's placement in Agency custody, and the promotion of Child's welfare in Child's kinship foster home with his pre-adoptive maternal grandmother. Agency's Brief at 15. The Agency contends that reunification of Child with either parent is not an appropriate or safe option for Child now or within the foreseeable future. Id. Finally, the Agency asks us to reverse the trial court's findings of fact and credibility determinations set forth in the trial court's opinions, dated March 19, 2019, and April 16, 2019, arguing that the findings are not supported by the record. Id. at 4, 15. Accordingly, the Agency argues that

---

[4] Moreover, the Agency asserts that in its denial order, the trial court erroneously cited Section 2311 of the Adoption Act rather than Section 2511. Agency's Brief at 13. As this was clearly a clerical error, we do not find it to be a basis for vacating the order of the trial court.

the trial court should have terminated the parental rights of both parents under Pa.C.S. § 2511(a)(5), (8), and (b).

Section 2511 of the Adoption Act provides, in relevant part, as follows:

§ 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the

control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(5), (8), (b).

To satisfy the requirements of Section 2511(a)(5), the moving party must produce clear and convincing evidence regarding the following elements: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. In re Adoption of M.E.P., 825 A.2d 1266, 1273–1274 (Pa. Super. 2003).

When addressing Section 2511(a)(8), we apply the following standard:

To terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. Section (a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of [the agency] supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or

- 9 -

ability to remedy the conditions that initially caused placement or the availability or efficacy of [agency] services.

In re K.Z.S., 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

This Court has long recognized that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. In re A.L.D., 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. Id. Regarding incarcerated parents, our Supreme Court has instructed:

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and [] the causes of the incapacity cannot or will not be remedied.

In re Adoption of S.P., 47 A.3d at 828. Our Supreme Court further reiterated the standard of review pursuant to Section 2511(a)(1) for abandonment and added as follows:

> Applying [In re: Adoption of McCray,] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." [460 Pa. 210, 217, 331 A.2d 652, 655]. We observed that the father's incarceration made his performance of this duty "more difficult." Id.
>
> * * *
>
> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we

- 10 -

are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*In re Adoption of S.P.*, 47 A.3d at 828 (quoting *In re: Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975)) (footnotes and internal quotation marks omitted). Ultimately, the Court held "that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing 'essential parental care, control or subsistence.'" *In re Adoption of S.P.*, 47 A.3d at 830. The Court also noted that the length of the remaining confinement can be considered as highly relevant regarding whether termination is proper under 23 Pa.C.S. § 2511(a)(2). *In re Adoption of S.P.*, 47 A.3d at 830.

Regarding Section 2511(b), the court inquires whether the termination of the parental rights would best serve the developmental, physical and emotional needs and welfare of Child. See *In re C.M.S.*, 884 A.2d 1284, 1286–87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* This Court has stated:

> Once the statutory requirement for involuntary termination of parental rights has been established under subsection (a), the court must consider whether the child's needs and welfare will be

- 11 -

met by termination pursuant to subsection (b). In re D.W., 856 A.2d 1231, 1234 (Pa. Super. 2004). In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. In re C.S., [761 A.2d 1197, 1202 (Pa. Super. 2000)].

In re Z.P., 994 A.2d at 1121. We have explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). In re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super. 2008) (en banc).

In its April 16, 2019 Rule 1925(a) opinion, the trial court stated as follows:

> In order to reach a conclusion under 23 Pa.C.S. §2511(a)(5) that a Petition to Terminate Parental Rights should be granted and parental rights terminated, we must find by clear and convincing evidence the following:
>
> > The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> Furthermore, it is well-settled that the fact of incarceration alone is not sufficient to justify the termination of parental rights. In re Adoption of S.P., 47 A.3d 817 (2012).
>
> Based upon our careful consideration of the evidence presented, we cannot find that Father cannot or will not remedy the conditions within a reasonable period of time, given the

services and assistance now available to him and his realization of the gravity of his potential loss. Although he has been in and out of jail for many years, and in and out of periods of sobriety for many years, recovery from the disease of addiction is rarely achieved after one attempt. He sincerely expresses a desire to make a change and has taken steps to do so with his participation in boot camp. The structure and discipline of boot camp afford him the treatment resources and the opportunity to develop life skills that will lead to a steady income, stability, and the ability to parent.

In addition, we recognize that a parent's responsibilities are not tolled during incarceration. A parent must utilize available resources to maintain a close relationship with the child while he is in prison. In re Adoption of C.L.G., 956 A.2d 999, 1006 (Pa. Super. 2008). A parent is expected to be steadfast in overcoming obstacles to maintaining the parent-child relationship. In re Burns, 379 A.2d 535 (Pa. 1977). In this case, Father has continued to nurture his relationship with his son despite the constraints of incarceration. He made arrangements to see [Child] while he was in prison. He writes letters to [Child's] caretaker, inquiring of the welfare of [Child]. He has a plan for housing when he is released. He has employment options and aspires to further his education. He enrolled in a military-style correctional facility that provides parenting classes, self-help groups, and drug and alcohol treatment in a therapeutic community. (Transcript, pp. 50-51). He continues to communicate with his caseworker at the [Agency].

Father will be released from incarceration in only three months, at the beginning of July 2019. See In re Adoption of S.P., 47 A.3d 817, 830 (Pa. 2012) (the length of the remaining confinement can be considered highly relevant to whether the conditions and causes of the incapacity or neglect cannot or will not be remedied by the parent). In addition to the services available to Father while in boot camp, upon his release[,] the Agency can assess him for services to assist him in reunification with his son. If Father fails to benefit from the resources currently available to him, fails to follow recommended treatment for his disease, or fails to pursue job skills, employment, and housing after his release; if he fails to remain sober, and fails to comply with the recommendations of the Agency, this [c]ourt will consider all those factors if a subsequent petition for termination of parental rights is presented.

With respect to Mother, she has demonstrated that she cannot or will not remedy those conditions, and is not availing herself of the services or assistance that are likely to remedy the conditions which led to the removal or placement of the [Child] within a reasonable period of time. However, the purpose of the involuntary termination provisions of the Adoption Act is not to punish an ineffective or negligent parent. In re B.E., 377 A.2d 153, 156 (Pa. 1977). The purpose of the involuntary termination of parental rights process is to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child. In this case, having decided that Father's rights should not be terminated pursuant to section 2511(a)(5), we will not terminate Mother's rights under this section[,] either.

In order to reach a conclusion under 23 Pa.C.S. § 2511(a)(8) that a Petition to Terminate Parental Rights should be granted and parental rights terminated, we must find by clear and convincing evidence the following:

"The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child."

Although more than 12 months have elapsed since the date of [Child]'s removal from the home, one of the conditions which led to the removal of the child does not continue to exist. Most significantly, a condition that no longer exists is Father's inability to see himself as an addict with a disease in need of treatment. Since June of 2018, Father has awakened to an understanding of the role that addiction has played in his life since he was 20 years old. With this insight, he has made a commitment to rehabilitation, sobriety and self-betterment for the first time in ten years. In other words, a condition which previously existed – that of a parent in active addiction – no longer exists; and with that one change, and Father's impending release from incarceration, other conditions such as housing and employment are likely to follow.

Finally, we must take into account the impact of severing close parental ties and the resulting pain this may cause the child when considering "the best interests of the child" standard. In re Adoption of K.J., 936 A.2d 1128 (Pa. Super. 2007). Because [Child] is only 2½ years old, he cannot articulate his feelings or desires; and because we do not have the benefit of expert opinion or a bonding assessment, we could only speculate as to the impact the loss of [Father] in his life may have on him. However, we do know that Father emphatically states he desires to maintain a relationship with his child, and he is doing so, to the extent he is able within the constraints of his incarceration. What little evidence we have indicates that a paternal bond exists between [Father] and son; [Child] runs to [Father] with a smile on his face and calls him "Dada." Under the current circumstances, we do not find that the developmental, physical and emotional needs and welfare of [Child] would be served by severing his relationship with [Father].

We acknowledge that the Juvenile Act emphasizes the need for permanency in a child's life, because a child's development is enhanced in stable, permanent families. However, we are also keenly aware that termination of parental rights is darkly, yet accurately, referred to as "the death penalty" of dependency court. Because of the seriousness and finality of the termination order, we will err on the side of denying a petition, rather than granting it; and[,] in this case, we believe it is in [Child's] best interests to maintain the status quo, and to give Father a reasonable period of time from the time he is released from incarceration to establish that he will continue to remedy the conditions which led to the original removal and placement.

Accordingly, we do not find that [the Agency] has met its burden of proof under section 2511(a)(8), as the conditions have changed and termination would not best serve the needs and welfare of [Child].

Again, having decided that Father's rights should not be terminated pursuant to section 2511(a)(8), we will not terminate Mother's rights under this section[,] either.

Accordingly, based upon the foregoing, we respectfully suggest that the decision to deny the [p]etition to terminate parental rights be affirmed.

Trial Court Opinion, 4/16/19, at 10–14.[5]  The trial court's determinations regarding Sections 2511(a)(5) and (8) are supported by ample, competent evidence in the record.

Generally, this Court has stated that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights.  In re L.M., 923 A.2d 505, 512 (Pa. Super. 2007).  We have stated that a "child's life 'simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.'"  In re Z.P., 994 A.2d 1108, 1125 (Pa. Super. 2010).  Our Supreme Court has instructed, however, that this Court should defer to the trial court where a "close call" was made.  See R.J.T., 9 A.3d at 1190.

> Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second[-]guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.  In re Adoption of Atencio, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

---

[5] In this case, the orphan's court concluded that the Agency's petition failed under Sections 2511(a)(5) and (8); thus the court did not need to engage in the second prong of termination analysis under Section 2511(b).  Because the trial court's finding that the Agency failed to satisfy its burden of proof pursuant to Section 2511(a) is supported by the record, the Agency's third issue, relating to the trial court's failure to engage in a proper Section 2511(b) analysis, is without merit.

*In re Adoption of S.P.*, 47 A.3d at 826–827. Thus, the trial court did not abuse its discretion in refusing to terminate the parental rights of Father and Mother pursuant to Sections 2511(a)(5) and (8).[6]

After a careful review of the record, we find that there was competent, clear and convincing evidence in the record to support the trial court's denial of the petitions to terminate Mother's and Father's parental rights to Child under Sections 2511(a)(5) and (8). Accordingly, we affirm the trial court's order.[7]

_____

[6] We note that the trial court declined to terminate Mother's parental rights without engaging in a full analysis under 23 Pa.C.S. § 2511. In denying the petition to terminate Mother's rights, the trial court looked to the fact that the purpose of the "Adoption Act is not to punish an ineffective or negligent parent" and noted that involuntary termination of parental rights is intended to dispose of the need for the parent's consent to adoption of the child. Trial Court Opinion, 4/16/19, at 12. Because the trial court did not terminate Father's parental rights, it found that no adoption proceedings would be initiated in the near future; thus, it declined to terminate Mother's parental rights as well. Following a thorough review of the record, we note that the trial court has essentially preserved the status quo. After a review of the record and given our deferential standard on review, we find that the trial court did not abuse its discretion in preserving the status quo in the instant case. See *In re S.P.*, 47 A.3d at 826 (noting that this Court should not second guess the trial court and impose its own judgment if the trial court's conclusions are not the result of an error of law or an abuse of discretion).

[7] Notably, on September 19, 2017, when Child was removed from Mother's care and custody, and Child was placed in emergency custody, Father was incarcerated in the Washington County Prison. See N.T., 2/14/19, at 19, 24, 33. As such, Child was not removed from Father's care and custody, and neither subsection (a)(5) nor (a)(8) was applicable to the termination of Father's parental rights. See *In re Z.P.*, 994 A.2d at 1123 n.2 (providing that subsections (a)(5) and (a)(8) do not apply when a natural father is incarcerated and has had no custody of the child). We, nevertheless, have

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/15/2019

_____

written to express our agreement with the trial court's reasoning in this matter.